**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATHANIEL HOWARD THOMAS,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | No. 3:21-CV-1245-X (BH) |
| | ) | |
| **DALLAS COUNTY, et al.** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the plaintiff's claims for monetary damages against the Texas Department of Criminal Justice should be **DISMISSED WITHOUT PREJUDICE** as barred by the Eleventh Amendment, and his remaining claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

**I. BACKGROUND**

Plaintiff Nathaniel Howard Thomas (Plaintiff) sues Dallas County (County), the Hutchins State Jail (Jail), and the Texas Department of Criminal Justice (TDCJ) as the "head" of Jail. (doc. 3; doc. 4; doc. 10 at 3.)[2] He contends that on June 12, 2020, in the Eastern District of Texas, he pleaded guilty to violating the terms of his federal supervised release and was sentenced to twelve months in federal prison. (doc. 4 at 3.) He was taken to a county jail, where he began serving his sentence, but on October 20, 2020, he was transferred to the Dallas County Jail "to take care of a 5 year old warrant which was time barred by state statute." (*Id.*) He later pleaded guilty to state charges in exchange for a time-served sentence; instead of receiving the benefit of his bargain, however, he was sent to Jail to serve an eight-month sentence. (*Id.* at 3-4; doc. 10 at 1.) Plaintiff did

---

[1] By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for judicial screening.

[2] Citations to the record refer to the CM/ECF system number at the top of each page rather than the page numbers at the bottom of each filing.

not know why he was sent to Jail and told "Hutchins State Officials" that he was a federal prisoner serving a federal sentence of twelve months, and that he could not be serving a state sentence at the same time, but no one seemed to care. (doc. 4 at 4, 7, 10.) On April 26, 2021, Jail released him "as time served" and "had to also discharge [his] federal sentence." (*Id.* at 4.)

Plaintiff contends that the defendants' actions amounted to an illegal seizure and violated his rights under the Thirteenth and Fourteenth Amendments. (*Id.* at 2; doc. 10 at 3.) He seeks $100 million for eight months of allegedly wrongful incarceration in Jail, as well as a criminal investigation.  (*See* doc. 4 at 5; doc. 10 at 4.)

## II. PRELIMINARY SCREENING

Because Plaintiff is proceeding *in forma pauperis*, his complaint is subject to screening under 28 § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.  A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The analysis for determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is the same one employed under Fed. R. Civ. P. 12(b)(6). *See Fierro v. Knight Transp.*, No. EP-12-CV-218-DCG, 2012 EL 4321304, at *7 (W.D. Tex. Sept. 18, 2011), slip copy,

(citing *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam)) (applying the same standard of review applicable to dismissals under Rule 12(b)(6) for screening dismissals under § 1915(e)(2)(B)(ii)); *Holt v. Imam*, NO. C-07-406, 2008 WL 1782351, at *2 (S.D. Tex. Apr. 17, 2008) (citing *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998)) (noting that § 1915A(b)(1), § 1915(e)(2)(B)(ii), and Rule 12(b)(6) all employ the same language—"failure to state a claim upon which relief may be granted"). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

### III. SECTION 1983

Plaintiff sues, in part, under 42 U.S.C. § 1983. It "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A. **Hutchins State Jail**

Plaintiff sues Jail for violating his rights under the Thirteenth and Fourteenth Amendments based on his service of an allegedly illegal sentence in that facility. It is a non-jural entity, however; Jail "is not a separate legal entity subject to suit and therefore not a proper defendant in this case." *Lindley v. Bowles*, No. 3:02-cv-595-P, 2002 WL 1315466, at *2 (N.D. Tex. June 12, 2002); *see also Holmes v. Hutchins*, No. 3:20-cv-3642-S-BN, 2020 WL 10090790, at *3 (N.D. Tex. Dec. 16, 2020), *rec. accepted* (finding that Jail was not subject to suit).

B. **TDCJ**

Plaintiff also sues TDCJ as the "head" of Jail. (doc. 10 at 3.)[3] To the extent that he sues for monetary damages based on the alleged violation of his Thirteenth and Fourteenth Amendment rights by Jail, his claims are barred by the Eleventh Amendment.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." Under the Eleventh Amendment, "[a]bsent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'" *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (quoting *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987)); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "This withdrawal of jurisdiction effectively confers an immunity from suit." *Id.* at 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman*, 415 U.S. at 663. This immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714

---

[3] Plaintiff's responses to a magistrate judge's questionnaire constitute an amendment to his complaint. *See Macia v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Robertson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curium) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear federal and state law claims).

The Fifth Circuit has held previously that TDCJ is a state agency that enjoys immunity from suit in federal court. *See Cox v. Texas*., 354 F. App'x 901, 902 (5th Cir. 2009) (per curiam) (citing *Harris v. Angelina County, Tex.*, 31 F.3d 331, 338 n. 7 (5th Cir. 1994) ("Under the current state of the law, the TDCJ is deemed an instrumentality of the state operating as its alter ego in carrying out a public function of the state, and is immune from suit under the Eleventh Amendment.") Further, although Congress has the power to abrogate immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecommns. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity here by consenting to suit, nor has Congress abrogated the Eleventh Amendment by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curium).

The Eleventh Amendment bars Plaintiff's claim against TDCJ for monetary damages, which is the only relief that he seeks against it, and it should be dismissed without prejudice. *See*, *e.g.*, *Colbaugh v. Stephens*, Case No. W-16-CA-067-RP, 2016 WL 6157441, at *2 (W.D. Tex. Oct. 21, 2016) (dismissing claims against TDCJ under the Eleventh Amendment); *see also Anderson v. Jackson State Univ.*, 675 F. App'x 461, 464 (5th Cir. 2017) (claims barred by the Eleventh Amendment should be dismissed without prejudice).

C.    **Dallas County**

Plaintiff contends that through fraudulent documents, Dallas County sent him to Jail, where he was forced to serve an illegitimate eight-month sentence in violation of a plea agreement, even though he was serving a federal sentence for a separate conviction at the time. (*See* doc. 4 at 3-4; doc. 10 at 1.) He also claims—referencing the Fifth and Fourteenth Amendments—that Dallas County illegally seized him, presumably by sending him to Jail to serve a state sentence in alleged violation of his plea agreement. (*See* doc. 10 at 1.)[4]

Municipalities, including counties, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.*

---

[4] Plaintiff's claims properly arise under the Fourteenth Amendment because the Fourth Amendment, which contains an explicit prohibition against unreasonable seizures, does not govern claims based on post-conviction incarceration. *See*, *e.g.*, *Brown v. City of Chicago*, No. 21-1433, 2021 WL 6102980, at *2 (7th Cir. Dec. 22, 2021) (noting that claim of unlawful post-trial detention was better characterized as a Due Process claim because, "after a criminal conviction, 'the Fourth Amendment drops out,' and a challenge to the conviction or ensuing incarceration arises under the Due Process Clause") (citing *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 n.8 (2017); *Lewis v. City of Chicago*, 914 F.3d 472, 480 (7th Cir. 2019)). Because he alleges only state action, the Fourteenth Amendment's Due Process Clause applies. *See*, *e.g.*, *Thorton v. Merchant*, Civ. A. No. H-10-0616, 2011 WL 147929, at *12 n.8 (S.D. Tex. Jan. 18, 2011) (holding that actions against state actors, rather than federal actors, derive from the Fourteenth Amendment) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). In relevant part, that clause prohibits states from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1.

(citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691-95. "Official policy" is defined as:

1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially unconstitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result. *Piotrowksi*, 237 F.3d at 579-80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849-50 (5th Cir. 2009), *cert denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

### 1.     *Custom or Policy*

"The description of a policy or custom and its relationship to the underlying constitutional

violation...cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept's*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain recovery...or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted).

Here, Plaintiff fails to identify any policy or custom of Dallas County that caused the alleged constitutional violations. (doc. 10 at 2.) He specifically states that he is not claiming that such a policy or custom exists. (*See id.*) (answering "no" to a question about whether he claims that the alleged constitutional violation occurred pursuant to an official policy or custom of Dallas County).

### 2.    *Constitutional Violation*

Plaintiff has also failed to identify an underlying constitutional violation, which also defeats his § 1983 claim against Dallas County. *See*, *e.g.*, *Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (explaining that there could be no *Monell* claim without an underlying constitutional violation).

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that a plaintiff who seeks to recover damages for an allegedly unconstitutional conviction or imprisonment or other unlawful action that renders a conviction or sentence invalid must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. In this circuit, even after his sentence has expired, the plaintiff must still show that it was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or

otherwise called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254," to recover damages for a claim that the conviction or resulting sentence was illegal. *See Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (finding that even though the plaintiff was no longer in custody, he could not obtain damages for an unconstitutional imprisonment without first meeting the *Heck* requirements).

Here, Plaintiff appears to claim that Dallas County—through unspecified fraudulent documents—caused him to be illegally incarcerated in Jail in violation of his plea agreement. Success on this claim would require a finding that he served an illigitimate sentence in violation of his plea agreement; because he does not allege that the state sentence was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or otherwise called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254," *Heck* bars the claim until he can make that showing. *See*, *e.g.*, *Kinser v. Cty. of Madera*, No. 1:14-cv-1227-AWI-GSA, 2015 WL 75183, at *3 (E.D. Cal. Jan. 6, 2015) ("Here, Plaintiff alleges that her sentence of sixteen months' imprisonment is invalid because it breaches her plea agreeement. In seeking an order enforcing the 'original benefit' of her plea agreement and enjoining further proceedings to return her to custody to serve out her term, Plaintiff seeks injunctive relief that would necessarily imply the the invalidity of her sentence... Thus, because success in the instant action would necessarily imply the invalidity of Plaintiff's conviction and/or sentence in the underlying criminal matter, Plaintiff's § 1983 claim is barred by *Heck* until such time as she can demonstrate that her conviction and/or sentence have been overturned."); *see also Davis v. County of Allegheny*, Civil Action No. 09-415, 2010 WL 1136295, at *3 (W.D. Pa. Feb. 5, 2010), *rec. adopted* 2010 WL 1062562 (W.D. Pa. Mar. 23, 2010) (concluding that the

9

plaintiff's success on his claim that the defendants failed to honor a plea agreement allegedly made to "dismiss all charges" would necessarily render the plaintiff's convictions or sentences invalid and therefore was barred by *Heck*); *Burhman v. Wilkinson*, 257 F.Supp.2d 1110, 1119 (S.D. Ohio 2003) (noting that "claims against state officials for breach of plea agreements, implicating, as such claims do, the terms of one's conviction or sentence, must be raised pursuant to a habeas petition") (citing *Mabry v. Johnson*, 467 U.S. 504 (1984)).[5]

Plaintiff's claims against Dallas County should be dismissed with prejudice for failure to state a claim because he does not identify a policy or custom or plausibly allege an underlying constitutional violation.

## IV. REQUEST FOR CRIMINAL INVESTIGATION

Plaintiff also asks the Court to "order a criminal investigation into the illegal acts of both Dallas County and ... Jail." (doc. 4 at 5.) This form of relief is not available in a § 1983 action. *See, e.g.*, *Bland v. Terrebonne Parish Criminal Justice Complex*, Civil Action No. 09-4407, 2009 WL 3486449, at *3 (E.D. La. Oct. 23, 2009). "Federal courts are not investigative or prosecutorial agencies. Individuals seeking the criminal investigation or prosecution of alleged wrongdoers should request the intervention of the appropriate law enforcement authorities, not the federal courts." *Id.* (citing *Hymel v. Champagne*, Civ. Action No. 07-450, 2007 WL 103027, at *2 (E.D. La. Mar. 28, 2007); *May v. Kennard Indep. School Dist.*, No. 9:96-CV-256, 1996 WL 768039, at *4 (E.D. Tex.

---

[5] Even if Plaintiff is simply complaining of a transfer to another prison, he still fails to state a claim. An inmate does not have a right or protectable interest in serving his or her sentence in a particular jail. *See, e.g.*, *Koger v. Snyder*, 252 F.Supp.2d 723, 727 (C.D. Ill. 2003) (noting that a penitentiary inmate has no constitutional right to assignment to a specific institution) (citations omitted); *see also Fields v. Hobbs*, No. 5:11CV00190 BSM/JTR, 2011 WL 5869802, at *2 (E.D. Ark. Oct. 13, 2011), *rec. accepted* 2011 WL 5869796 (E.D. Ark. Nov. 21, 2011) (rejecting claim by prisoner that his constitutional rights were violated when the defendants refused to transfer him to a federal prison to serve concurrent federal and state sentences because "[i]t is well settled that a prisoner does not have a constitutional right to be held in prison of his choosing" (citing *Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983); *Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999); *Goff v. Burton*, 91 F.3d 1188, 1191 (8th Cir. 1996)).

Nov. 22, 1996).

# V. STATE LAW FRAUD CLAIM

Liberally construing Plaintiff's allegations, it appears that he intends to allege a fraud claim under state law. (*See* doc. 10 at 1.)

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendant or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1996). When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. 1367(c)(3).[6] This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are

---

[6] Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

    (1)      the claim raises a novel or complex issue of law,

    (2)      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3)      the district court has dismissed all claims over which it had original jurisdiction, or

    (4)      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endant jurisdiction is a doctrine of discretion, not of [a] plaintiff's right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claim because it arises from the same "common nucleus of operative facts" as his federal claims. Requiring him to litigate it in state court would "necessarily require consideration by two district courts of the same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Because, as discussed below, his claim is meritless, it would also impose unnecessary expenses on the court system and the parties involved. *See McCall v. Peters*, No. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 11, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendant or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating a case).

Plaintiff contends that Dallas County transferred him to Jail through fraudulent documents. He has failed to plausibly allege a fraud claim under state or federal law. *See Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (applying Rule 9(b) pleading standard to state fraud claims).[7] Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead

---

[7] In Texas, the elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7)

the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotations omitted). Plaintiff does not explain how any documents are fraudulent; he has not laid out the "who, what, when, where, and how," of his fraud claim, and it should be dismissed. *See id.* at 179 (further citations omitted).

## VI. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Leave to amend is not necessary, however, where the plaintiff has already plead his best case. *See Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017)

---

the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

(citations omitted). A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint."). Here, Plaintiff submitted a memorandum in support of his complaint and also amended his complaint through his responses to a questionnaire, so he has presented his best case.

## VII. RECOMMENDATION

Plaintiff's claims for monetary damages agaisnt the TDCJ should be **DISMISSED WITHOUT PREJUDICE** as barred by the Eleventh Amendment, and his remaining claims should be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

**SO RECOMMENDED** on this 21st day of November, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15